**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _8/28/2021_
```

**Lizandra Vega,**

                                        **Plaintiff,**

            -against-

**Hastens Beds, Inc., et al.,**

                                        **Defendants.**

**1:21-cv-02732 (PGG) (SDA)**

<u>**OPINION AND ORDER**</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

Pending before the Court is a motion by Defendants Hästens Sängar AB ("Hastens AB"), Hästens Ltd. ("Hastens Ltd.") and Jan Ryde ("Ryde") (collectively, the "Foreign Defendants"), pursuant to Rules 12(b)(2), 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff Lizandra Vega ("Plaintiff" or "Vega"). (Foreign Defs.' Not. of Mot., ECF No. 36.) For the reasons set forth below, service on the Foreign Defendants is QUASHED, and Plaintiff shall have sixty (60) days to effect proper service on the Foreign Defendants. Plaintiff is granted leave, pursuant to Rule 4(f)(3), to serve Hastens AB and Ryde by email upon the Foreign Defendants' counsel, Nixon Peabody LLP. I defer making a recommendation with respect to the Foreign Defendants' motion to dismiss for lack of personal jurisdiction, pending the conclusion of jurisdictional discovery and supplemental briefing.

<u>**BACKGROUND**</u>

The Complaint in this action, filed on March 31, 2021, alleges employment-related federal and state law claims for discrimination and retaliation against the Foreign Defendants and a U.S.-based entity, Hästens Beds, Inc. ("Hastens Beds") (the Foreign Defendants and Hastens Beds,

collectively, "Defendants"). (*See* Compl., ECF No. 1, ¶¶ 45-49, 203-57.) Vega, a New York resident, alleges that she was "an 'employee' of Defendants under all relevant statutes." (*See id*. ¶ 45.) Emails sent by Vega during the course of her employment reflect that her signature block included the title "Global Head of Talent Recruitment" above the corporate names "Hästens Limited" and "Hästens Beds, Inc." and the email address "lizandra.vega@hastens.se."[1] (*See* Ex. F to 8/6/21 Christensen Decl., ECF No. 39-6.)

Vega asserts that each of the corporate Defendants—*i.e.*, Hastens Beds, Hastens AB and Hastens Ltd.—"met the definition of 'employer' under all applicable statutes." (*See* Compl. ¶¶ 46-48.) She further asserts that Hastens Beds is "headquartered at 500 Seventh Avenue, 8th Floor, New York, New York 10018," and that each of Hastens AB and Hastens Ltd. "operate[] throughout the United States and in New York, with offices at 500 Seventh Avenue, 8th Floor, New York, New York 10018." (*See id*.) Hastens Beds is incorporated in Delaware with its principal place of business in New York, Hastens AB is a Swedish entity with its principal place of business in Sweden, and Hastens Ltd. is Maltese entity with its principal place of business in Malta. (Foreign Defs.' Mem., ECF No. 38, at 2.)

Vega asserts that Ryde "is the owner and CEO" of Hastens Beds, Hastens AB and Hastens Ltd.,[2] that he "had the authority to direct [her] work activities, assign her job responsibilities and

---

[1] The suffix ".se" is the country code top-level domain for Sweden, home of Hastens AB. *See* Swedish Internet Foundation, *Home* (English), https://internetstiftelsen.se/en/ (last visited Aug. 27, 2021).

[2] Corporate documents for Hastens Beds identify Ryde as Chief Executive Officer. (*See* 8/6/21 Christensen Decl., ECF No. 39, ¶ 25.) Publicly available documents state that Ryde is "Executive Chairman and Owner of Hästens Group Bed Company." *See L. Kahle*, "20 Minutes With: Jan Ryde, Executive Chairman and Owner of Hästens Group Bed Company," *Forbes* (Dec. 16, 2019). The Hastens.com website states that, in 1988, Ryde "t[ook] over the company reins" *See Legacy*, https://www.hastens.com/us/heritage/legacy (last visited Aug. 27, 2021).

monitor her performance" and that Ryde was her "'supervisor' within the meaning of all applicable statutes." (*Id*. ¶ 49.) Ryde is a Swedish individual residing in Sweden. (*See* Foreign Defs.' Mem. at 2.)

On April 8, 2021, Plaintiff served Hastens Beds with a Summons and the Complaint in this action via the New York Secretary of State's office. (*See* 4/12/21 Aff. of Service, ECF No. 13.) On April 29, 2021, Plaintiff sent forms for waiver of service (along with a copy of the Complaint and two copies of the Summonses issued to each of the Foreign Defendants) via DHL Express to Ryde at an address in Sweden. (*See* 5/10/21 Decl. of Service, ECF No. 18; *see also* DHL receipt, ECF No. 18-1.) The waiver forms were not returned. (*See* 8/6/21 Christensen Decl. ¶ 8.)

On June 14, 2021, Hastens Beds filed its Answer. (*See* HB Answer, ECF No. 19.)  In its Answer, Hastens Beds does not contest that it was validly served and does not assert that the Court lacks personal jurisdiction over it. (*See id*.)

On June 22, 2021, a process server went to the offices of Hastens Beds at 500 Seventh Avenue, 8th Floor, New York, New York 10018 to attempt to serve the Foreign Defendants, but there was "no one in the office," and the building receptionist advised that (s)he "was not authorized to accept service" for Hastens AB or Hastens Ltd. and that Ryde was "unknown." (*See* 8/6/21 Christensen Decl., Ex. B (ECF No. 39-2), Ex. C (ECF No. 39-3), Ex. D (ECF No. 39-4).) On June 24, 2021, two attempts were made to serve Hastens Ltd. at an office address in Malta, but the office was unattended. (*See* 6/25/21 Cert. of Service, ECF No. 23, ¶ 1.[3]) On June 25, 2021, another attempt was made, but the office was still unattended, and the process server "post[ed the

---

[3] Plaintiff filed the June 25 Certificate of Service twice, once at ECF No. 23 and once at ECF No. 34.

Summons and Complaint] through the letterbox at [the Malta address] in [a] sealed envelope for the attention of Hastens Ltd." (*See id*. ¶¶ 1-2.)

On June 29, 2021, a process server from London-based Tremark Associates delivered the Summonses addressed to Hastens AB and Ryde, as well as the Complaint, to a "staff member named Linnea Forskil" at the offices of Hastens AB in Sweden. (*See* 6/30/21 Cert. of Service, ECF No. 33, ¶ 1.) The process server was advised that Ryde was "travelling and [was] currently not available in the country." (*See id*.) The same day, the same process server attempted to deliver the Summons and Complaint to Ryde at his residence address in Sweden, but "the residence was found unattended." (*See id*. ¶ 2.) Ryde's neighbors "confirmed that Jan Ryde reside[d] [at the address] but [was] out of [the] country." (*See id*.) The process server then "post[ed the Summons and Complaint] through the letterbox at [Ryde's residence address] in [a] sealed envelope for the attention of Jan Ryde." (*See id*.)

The Certificate of Service for Plaintiff's purported service in Sweden upon Hastens AB and Ryde attaches the documents served—*i.e.*, a Summons addressed to Hastens AB, a Summons addressed to Ryde and two copies of the Complaint. (*See* 6/30/21 Cert. of Service at PDF pp. 3-106.) The Summonses and Complaint are written in English, not Swedish. (*See id*.)

On July 30, 2021, the Foreign Defendants filed the motion to dismiss and supporting documents now before the Court. (*See* Foreign Defs.' Not. of Mot.; Forskil Decl., ECF No. 37; Foreign Defs.' Mem.) On August 6, 2021, Plaintiff filed a declaration and memorandum of law in opposition. (*See* 8/6/21 Christensen Decl.; Pl.'s Opp. Mem., ECF No. 40.) On August 13, 2021, the Foreign Defendants filed their reply memorandum. (*See* Foreign Defs.' Reply, ECF No. 41.) On August 17, 2021, the pending motion was referred to me. (*See* Am. Order of Ref., ECF No. 42.)

## LEGAL STANDARDS

The Foreign Defendants' move the Court pursuant to Rules 12(b)(2), 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure. (*See* Foreign Defs.' Not. of Mot.) Rule 12(b)(2) provides for the defense of "lack of personal jurisdiction." *See* Fed. R. Civ. P. 12(b)(2). Rule 12(b)(4) provides for the defense of "insufficient process." *See* Fed. R. Civ. P. 12(b)(4). Rule 12(b)(5) provides for the defense of "insufficient service of process." *See* Fed. R. Civ. P. 12(b)(5). The Court addresses the process-related defenses first.

## I.   Process And Service Of Process

### A.   Rules 12(b)(4) And 12(b)(5)

The distinction between a motion for insufficient process under Rule 12(b)(4) and one for insufficient service of process under Rule 12(b)(5) is as follows:

> An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service. Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.[4] A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery of the summons and complaint. Other than those cases in which it is confused with a motion under Rule 12(b)(5), a motion under Rule 12(b)(4) is fairly rare.

5B Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ*. § 1353 (3d ed. 2004) (footnotes omitted).

When a defendant moves for dismissal for inadequate service of process pursuant to Rule 12(b)(5), the plaintiff "bears the burden of establishing that service was sufficient." *Khan v. Khan*,

---

[4] Rule 4(b) states as follows: "(b) Issuance. On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is properly completed, the clerk must sign, seal, and issue it to the plaintiff for service on the defendant. A summons—or a copy of a summons that is addressed to multiple defendants—must be issued for each defendant to be served." Fed. R. Civ. P. 4(b).

360 F. App'x 202, 203 (2d Cir. 2010) (summary order) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)). In considering a motion to dismiss pursuant to Rule 12(b)(5), the Court may look beyond the pleadings, including to affidavits and supporting materials, to determine whether service was proper. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003).

    **B.  Service Of Summons**

        **1.  Rule 4**

Federal Rule of Civil Procedure 4 provides the methods by which an individual or corporation may be served with a summons "in a foreign country" or "at a place not within any judicial district of the United States." *See* Fed. R. Civ. P. 4(f), (h). Rule 4(f) provides that an individual not in any judicial district may be served

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
>> (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;
>>
>> (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>
>> (C) unless prohibited by the foreign country's law, by:
>>
>>> (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>>
>>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f)(1)-(3). "Simply put, Rule 4(f) provides that an individual in a foreign country may be served: 1) pursuant to an international agreement; 2) where no agreement exists, or is not exclusive, by one of several alternatives; or 3) by other means not prohibited by international agreement, pursuant to a court order." *Chen v. China Green Agric., Inc.*, No. 20-CV-09232 (MKV), 2021 WL 103306, at *2 (S.D.N.Y. Jan. 6, 2021).

Rule 4(h)(2) governs service of a summons on a foreign corporation and incorporates most of Rule 4(f), pertaining to service of a summons on an individual. Rule 4(h)(2) provides that a corporation "at a place not within any judicial district of the United States" may be served "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2).

### 2.  Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents

In accordance with Rule 4(f), the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (the "Hague Service Convention"), to which the United States, Malta and Sweden are party, is an applicable international agreement governing the service of process across national lines. *See* Hague Service Convention, 20 U.S.T. 361, 1969 WL 97765 (Feb. 10, 1969).[5] The purpose of the Hague Service Convention "is to simplify, standardize, and generally improve the process of serving documents abroad," and it "specifies certain approved methods of service and pre-empts inconsistent methods of service whenever it applies." *Water Splash, Inc. v. Menon*, --- U.S. ----, 137 S. Ct. 1504, 1507 (2017) (internal quotation marks and citations omitted). Article 2 mandates that each contracting country "designate a Central Authority which

---

[5]  *See generally* Hague Conference on Private International Law, *Service Section*, https://www.hcch.net/en/instruments/conventions/specialised-sections/service (last visited Aug. 27, 2021).

[ ] undertake[s] to receive requests for service" from other countries party to the agreement. *See*
Hague Service Convention, 20 U.S.T. 361, Art. 2. Once a Central Authority receives a request, it
must serve the documents by a method prescribed by its internal laws or by a method designated
by the requester that is compatible with those laws. *Id.*, Art. 5. After the Central Authority serves
the person named in the request, it must "complete a certificate . . . that the document has been
served." *Id.*, Art. 6.

The Hague Service Convention provides alternate methods of service, in addition to the
Central Authority—*e.g.*, "service through consular channels", "service by mail if the receiving
[foreign] state does not object" and "service pursuant to the internal laws of the [foreign] state."
*See Burda Media, Inc.*, 417 F.3d at 300 (citing Hague Service Convention, Arts. 5, 6, 8, 9 & 10). In
particular, under Article 10 of the Convention, absent objections from the state of destination,
the Convention does not interfere with:

> (a) the freedom to send judicial documents by postal channels, directly to persons
> abroad,
>
> (b) the freedom of judicial officers, officials or other competent persons of the
> State of origin to effect service of judicial documents directly through the judicial
> officers, officials or other competent persons of the State of destination,
>
> (c) the freedom of any person interested in a judicial proceeding to effect service
> of judicial documents directly through the judicial officers, officials or other
> competent persons of the State of destination.

Hague Service Convention, Art. 10.

### 3.  The Court's Discretion To Quash Service Of Summons

Upon a finding of insufficient service, the Court may dismiss the case or may, in its
discretion, retain the case, quash service, and direct that service be effectuated properly. *See*
*M'Baye v. World Boxing Ass'n*, 429 F. Supp. 2d 652, 657 (S.D.N.Y. 2006). "[D]ismissal is not

mandatory when service of process is improper. Motions under . . . Rule 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the court a course of action other than simply dismissing the case when defendant's defense or objection[] is sustained." *Fed. Home Loan Mortg. Corp. v. Dutch Lane Assocs.*, 775 F. Supp. 133, 138 n.2 (S.D.N.Y. 1991) (citations omitted); *see also* 5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1354 ("The federal courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant. . . . [S]ervice generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly.").

### 4.  Court-Ordered Service Under Rule 4(f)(3)

Rule 4(f)(3) permits a Court to order that service of a summons be made by other means, "so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *Cunningham v. Gen. Motors LLC*, No. 20-CV-03097 (AKH), 2020 WL 4748157, at *1 (S.D.N.Y. Aug. 17, 2020) (citation omitted). "[S]ervice by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant." *Id.* (citation omitted).

District Judge Vyskocil recently discussed the circumstances under which court-ordered alternative service under Rule 4(f)(3) is appropriate, as follows:

> There is no strict requirement that a plaintiff pursue service through an international agreement before asking a court's assistance in ordering alternative service, and the decision of whether to allow that service is committed to the sound discretion of the district court. The rule treats each of the three alternatives equally and does not require a party to exhaust efforts to serve pursuant to Rules 4(f)(1) or 4(f)(2) before seeing an order under Rule 4(f)(3).

The law is clear, however, that before the Court will authorize alternative service pursuant to Rule 4(f)(3), the moving party must make some showing of the need for judicial intervention. The showing that must be made has frequently been described as follows: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary. Effectively, this rule requires the moving party first to follow—or attempt to follow—international agreements and law in recognition of principles of comity and not to whimsically seek an alternate means of service.

*Chen*, 2021 WL 103306, at *2 (cleaned up).

## II.  **Personal Jurisdiction**

"Although the questions of personal jurisdiction and service of process are closely interrelated, service of process is merely the means by which a federal court gives notice to the defendant and asserts jurisdiction over him; the actual existence of personal jurisdiction should be challenged by a Rule 12(b)(2) motion." 5B Wright & Miller, *Fed. Prac. & Proc. Civ*. § 1353 (footnote omitted).

On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001). "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). "Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a full-blown evidentiary hearing, plaintiffs need only make

a *prima facie* showing of personal jurisdiction.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).

A court may exercise either general or specific personal jurisdiction. *Daimler AG v. Bauman,* 571 U.S. 117, 127 (2014). To make out a *prima facie* case of personal jurisdiction, whether based on general or specific personal jurisdiction, a plaintiff must establish both a "statutory basis" for jurisdiction and that the exercise of such jurisdiction accords "with constitutional due process principles." *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*, No. 14-CV-01568 (JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y. 2014)). General personal jurisdiction subjects a defendant to suit on all claims. *Id*.; *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A court may assert general jurisdiction over a corporation where its "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear*, 546 U.S. at 919). The same test for general jurisdiction applies to individuals. *See Waldman v. Palestine Liberation Org*., 835 F.3d 317, 332 (2d Cir. 2016) ("there is no reason to invent a different test for general personal jurisdiction depending on whether the defendant is an individual, a corporation, or another entity"). Specific personal jurisdiction subjects a defendant to suit only on claims that arise from the defendant's conduct in the forum. *Cortlandt St. Recovery Corp*., 2015 WL 5091170, at *2; *see also Daimler*, 571 U.S. at 126-27.

"In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811-12 (S.D.N.Y. 2005) (collecting cases). "A district court retains considerable latitude in devising the

procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citation omitted). "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207-08 (2d Cir. 2003)).

## DISCUSSION

### I.   The Foreign Defendants' Process-Related Defenses

#### A.  Rule 12(b)(4)

Insofar as the Foreign Defendants have moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(4), for insufficient process, such motion is not well founded. The Foreign Defendants do not assert any defects in the Summonses served, and the Court finds none. As such, process itself was not insufficient. *See* 5B Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1353.[6]

#### B.  Rule 12(b)(5)

The Court next considers the Foreign Defendants' motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(5), for insufficient service of process. The Court considers each attempted service in turn.

---

[6] The Court notes that some courts have analyzed under Rule 12(b)(4) a defendant's objection to a plaintiff's failure to translate documents served abroad. *See Hammond v. Honda Motor Co.*, 128 F.R.D. 638, 640 (D.S.C. 1989) (analyzing under Rule 12(b)(4) defendant's motion "based on [plaintiffs'] failure to translate suit papers into Japanese"); *Lemme v. Wine of Japan Imp., Inc.*, 631 F. Supp. 456, 464 (E.D.N.Y. 1986) (same). However, others have analyzed such objections under Rule 12(b)(5), *see, e.g.*, *Advanced Nano Coatings, Inc. v. Hanafin*, No. 09-CV-01243 (KMH), 2009 WL 10649579, at *3 (S.D. Tex. Aug. 10, 2009) (finding service insufficient under Rule 12(b)(5) where plaintiffs "failed to demonstrate that the documents served were sent in duplicate and were written or accompanied by a full and complete translation"); *Froland v. Yamaha Motor Co.*, 296 F. Supp. 2d 1004, 1006-08 (D. Minn. 2003) (where Japanese corporate defendant complained of, *inter alia*, "service of an untranslated summons and

1.  **April 29, 2021**

On April 29, 2021, pursuant to Rule 4(d) of the Federal Rules of Civil Procedure, Plaintiff sent "Waiver of Service of Summons forms, along with a copy of the Complaint . . . and two copies of the Electronic Summons[es] issued to Defendants [Hastens AB, Hastens Ltd. and Ryde,] to Jan Ryde, as the owner and Chief Executive Officer of [Hastens AB and Hastens Ltd.], via DHL Express to [Ryde's] last known residence of record [in Sweden]." (*See* 5/10/21 Decl. of Service.) However, the waiver forms were not returned. (*See* 8/6/21 Christensen Decl. ¶ 8.)

Under Rule 4(d), a plaintiff may notify a defendant "that an action has been commenced and request that the defendant waive service." *See* Fed. R. Civ. P. 4(d)(1). The request may "be sent by first-class mail or other reliable means," and must "be accompanied by a copy of the complaint, 2 copies of the [required] waiver form . . . , and a prepaid means for returning the form." *See* Fed. R. Civ. P. 4(d)(1)(C), (G). "When the plaintiff files a waiver, proof of service is not required and [the] rules apply as if a summons and complaint had been served at the time of filing the waiver." Fed. R. Civ. P. 4(d)(4). However, if a waiver is not executed and returned by a defendant, he or it is under no obligation to answer the lawsuit. *See* Fed. R. Civ. P. 4(d)(2), 1993 Advisory Committee Notes ("Unless the addressee consents, receipt of the [waiver] request under the revised rule does not give rise to any obligation to answer the lawsuit . . ..").

---

complaint," finding that defendant's motion to dismiss "alleges insufficiency of service of process, which implicates Rule 12(b)(5)"), and the Court finds this latter approach more compelling. *See* 5B Wright & Miller, *Fed. Prac. & Proc. Civ*. § 1353 ("[A] Rule 12(b)(4) motion is proper *only* to challenge noncompliance with the provisions of Rule 4(b) . . . ." (emphasis added)). In any event, as discussed below, given that the Court finds that service on the Foreign Defendants was insufficient under Rule 12(b)(5) on other grounds, the Court need not and does not rule on the translation issue (under either prong of Rule 12(b)).

Plaintiff's mere sending of waiver of service forms to Ryde, asking him to waive service on behalf of the Foreign Defendants pursuant to Fed. R. Civ. P. 4(d), plainly was ineffective to effectuate service. By sending such forms, Plaintiff simply was requesting that the Foreign Defendants agree to waive service. However, the Foreign Defendants did not execute and return the waiver of service forms, and, as such, Plaintiff did not properly effectuate service.[7] *See Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 400 (S.D.N.Y. 2020) ("Rule 4(d) required [plaintiff] to request a waiver of service from defendants, obtain defendants' written agreement on a waiver of service form, and then file the executed form.").[8]

### 2.  June 22, 2021

On June 22, 2021, a process server went to the New York City address where Hasten Beds is headquartered—*i.e.*, 500 Seventh Avenue, New York, New York—to seek to serve the Foreign Defendants. However, as Plaintiff herself states, "there was no one present to accept service on Defendants' behalf." (Pl.'s Opp. Mem. at 7.) Thus, service of process plainly was not accomplished on June 22. Plaintiff could not have believed that service was accomplished on any of the Foreign Defendants since she did not file proof of service to the ECF docket in connection with that service attempt. The affidavits regarding June 22 that Plaintiff filed in opposition to the instant motion are affidavits of "attempted service." (*See* 8/6/21 Christensen Decl., Exs. B, C & D.)

---

[7] In addition, the record before the Court does not reflect that Plaintiff sent to Ryde "a prepaid means for returning the [waiver] form[s]," as required. *See* Fed. R. Civ. P. 4(d)(1)(C).

[8] Plaintiff's request for service expenses under Rule 4(d)(2) of the Federal Rules of Civil Procedure (*see* Pl.'s Opp. Mem. at 13-14) is denied, because that Rule does not apply to defendants located outside the United States. *See* Fed. R. Civ. P. 4(d)(2) (imposing service expenses "If a defendant *located within the United States* fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States" (emphasis added)).

### 3. **June 24-25, 2021**

On June 24 and 25, 2021, a process server made multiple attempts to serve Hastens Ltd. at an office address in Malta, but the office was unattended, and he left the Summons and Complaint in a "letterbox." (*See* 6/25/21 Cert. of Service ¶¶ 1-2.) However, the exclusive service method in Malta under the Hague Service Convention is through Malta's Central Authority, as Malta expressly has objected to alternate methods of service. *See Malta - Central Authority & practical information*, https://www.hcch.net/en/states/authorities/details3/?aid=897 (last visited Aug. 27, 2021) ("The Government of Malta opposes to [*sic*] the use by other Contracting States of any of the methods of transmission and service of documents mentioned in the said Article 10 within its territory.").

Because Plaintiff did not accomplish service in Malta through its Central Authority, her attempted service on Hastens Ltd. in June 2021 was defective.

### 4. **June 29, 2021**

On June 29, 2021, in Sweden, a process server from London-based Tremark Associates delivered Summonses addressed to Hastens AB and Ryde and two copies of the Complaint to a "staff member named Linnea Forskil" at the offices of Hastens AB, then went to Ryde's residence and "post[ed a] Summons and Complaint] through the letterbox . . . in [a] sealed envelope for the attention of Jan Ryde." (*See* 6/30/21 Cert. of Service ¶¶ 1, 2.)

Sweden (in contrast to Malta) permits service "directly through the judicial officers, officials or other competent persons of the State of destination," pursuant to Article 10(b) and Article 10(c) of the Hague Service Convention. Hague Service Convention, Art. 10(b), 10(c); *see Vazquez v. Sund Emba AB*, 152 A.D.2d 389, 395 (2d Dep't 1989) ("We hold that Sweden plainly

contemplated service pursuant to the methods referred to in article 10 (b) and (c)[.]"). But here, service in Sweden was accomplished by a London-based process server (*see* 6/30/21 Cert. of Service at 1), and Plaintiff has not established that her process server was a "competent person" to effect service in Sweden. Thus, Plaintiff has not met her burden to establish that service was proper under the Hague Service Convention. *See Zhang v. Lo*, No. 14-CV-06945 (CM), 2020 WL 2133163, at *9 (S.D.N.Y. May 5, 2020) (finding service under Hague Service Convention in Hong Kong to be ineffective and stating that "anyone who serves process personally in Hong Kong must be 'a competent person[] of the State of destination'—meaning an authorized Hong Kong process server" (emphasis omitted) (citing Hague Service Convention, Art. 10)).

Plaintiff makes two other arguments in support of the purported validity of her June 29 service attempts. First, she argues that Ryde validly was served by mail under the Hague Convention since the Summons and Complaint were left in his "letterbox." (*See* Pl.'s Opp. Mem. at 9 (referring to Article 10(a) of the Hague Service Convention).) Article 10(a) of the Hague Service Convention, which applies in Sweden, grants "the freedom to send judicial documents by postal channels, directly to persons abroad." *See* Hague Service Convention, Art. 10(a). Here, however, a private person, not an official mail carrier, left an envelope containing judicial documents in a person's "letterbox." The judicial documents were not sent "by postal channels, directly to" Ryde. Thus, service was not accomplished under Article 10(a).

Second, Plaintiff argues that her service efforts in Sweden comported with Section 13 of the "Swedish Service Act"[9]—which provides that when attempts at service have "failed" or are

---

[9]   *See Service of Documents Act (2010:1932)*, https://www.riksdagen.se/sv/dokument-lagar/dokument/svenskforfattningssamling/delgivningslag-20101932_sfs-2010-1932 (last visited Aug. 27,

"hopeless," service may be effected, in Plaintiff's words, via an "alternate individual." (*See* Pl.'s Opp. Mem. at 10-11 (citing "Swedish Service Act, Section 13").) But Plaintiff cites no case law or other authority to support her assertion that any service attempted on June 29 was proper under the Swedish Service Act, and the Court is not persuaded that Plaintiff has made an adequate showing that her service attempts on either Swedish defendant would be deemed to have "failed" or to be "hopeless" under Swedish law. Moreover, the Court's own research suggests that Section 13 of the Swedish Service Act pertains only to corporate entities, *compare* Service of Documents Act (2010:1932) § 11 (applicable to service on a "natural person") *with id.* § 13 (applicable to service on a "legal person other than the state"), and that Section 13 is *specific* about which persons may be served when attempts on a principal corporate representative have failed or are hopeless: "a deputy to a competent deputy, or a deputy managing director." *Id.* § 13; *see also* John Fellas et al., Transnational Litigation: A Practitioner's Guide §§ 24:17 ("When the [Swedish] defendant is a company (or any other private legal entity), service must be made on a person authorized to represent the company, a member of the board for instance *or, when such service fails, an alternate member of the board*." (emphasis added)). Plaintiff has made no showing that Ms. Forskil qualifies as a "deputy to a competent deputy," a "deputy managing director," an "alternate member of the board," or a holder of a comparable title.[10] Thus, the

---

2021). Quotations of this Act herein are translated from Swedish using Google Translate. *See Ramirez v. Michael Cetta Inc.*, No. 19-CV-00986 (VEC), 2020 WL 5819551, at *9 n.5 (S.D.N.Y. Sept. 30, 2020).

The Court presumes that Plaintiff has in mind here service pursuant to Rule 4(f)(2)(A), which authorizes service "by a method . . .  as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction." Fed. R. Civ. P. 4(f)(2)(A).

[10] The Foreign Defendants argue that Ms. Forskil was neither an employee of Hastens AB nor authorized to accept service on its behalf. (*See* Foreign Defs.' Mem. at 3; Forskil Decl. ¶¶ 3-4 (asserting that she "[is] not an employee of [Hastens AB]" and "[is] not authorized to accept service on behalf of [Hastens AB].").). The Court notes, however, that Ms. Forskil's declaration discloses nothing about who does employ her or

Court finds that Plaintiff has not met her burden of establishing that any of her June 29 service

attempts were sufficient under Swedish law.[11]

### C. **Plaintiff's Insufficient Service Is Quashed**

Plaintiff thus fails to satisfy her burden of establishing sufficient service on any of the

Foreign Defendants. Rather than recommend dismissal of this case pursuant to Rule 12(b)(5), the

Court elects to quash service of process, and to order Plaintiff to effect service of process upon

---

about the nature of her duties at Hasten AB's offices, where she was found, and that a Swedish LinkedIn page exists for a Linnea Forskil who works as "Global Hospitality Coordinator for Hästens Beds." *See Linnea Forskil*, https://se.linkedin.com/in/linn%C3%A9a-forskil-5aa19217a (last visited Aug. 27, 2021).

[11] The Foreign Defendants argue that Plaintiff's June 29 service attempts also were defective because the service papers were not translated into Swedish. Under Article 5 of the Hague Convention, the Central Authority of a signatory State may require that service documents be written in or translated into the official language of the State addressed. Hague Service Convention, 20 U.S.T. 361, Art. 5. Sweden has such a requirement; however, as Plaintiff correctly notes (Pl.'s Opp. Mem. at 12), the requirement only applies where Sweden's Central Authority effects service under Article 5. *See Sweden - Central Authority & practical information*, https://www.hcch.net/en/states/authorities/details3/?aid=275 (last visited Aug. 27, 2021) ("Any document to be served *under Article 5(1)* must be written in or translated into Swedish." (emphasis added)); *accord Heredia v. Transp. S.A.S., Inc.*, 101 F. Supp. 2d 158, 161 (S.D.N.Y. 2000) ("[I]t is well-settled that the [Hague Service Convention's] translation requirement is triggered only when it is the Central Authority that serves the document[.]").

That said, to the extent Plaintiff seeks to effect service pursuant to Swedish law (and Rule 4(f)(2)(A)) rather than pursuant to Article 5 (and Rule 4(f)(1)), she must comport with the separate requirement, under section 4a of Sweden's Service of Documents Act, that "service of a document written in or translated into a language other than Swedish . . . may only take place with the consent of the recipient of the service if it is not clear that he or she understands the other language." Service of Documents Act (2010:1932) § 4a; *see also* Länsstyrelsen Stockholm, International Service of Documents (English), https://www.lansstyrelsen.se/stockholm/other-languages/english/society/international-service-of-documents.html (noting that, in context of "direct service of documents from abroad," including via postal service, "it is important to emphasise the rights of the addressee—namely the right to refuse to accept a document written in (or translated into) a language other than Swedish, and which the addressee does not understand."). *But see Vazquez*, 152 A.D.2d at 391 (holding, prior to current Service of Documents Act, that process personally served by Swedish notary public need not be translated into Swedish).

Thus, whether Plaintiff's service of English papers was permissible under Swedish law likely turns on whether it was clear that Ryde and Hastens AB—and, possibly, Ms. Forskil—understood English. While the Court, finding Plaintiff's June 29 service attempts insufficient on other grounds, declines to reach this determination under Swedish law, the Court notes that the record includes emails sent by Ryde suggesting that he does understand English. (*See, e.g.*, Compl. at 28, 31.)

the Foreign Defendants within sixty (60) days. *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985) ("[Insufficient] service will ordinarily be quashed and the action preserved where there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly." (cleaned up; citation omitted)); *Ansell Healthcare, Inc. v. Maersk Line*, 545 F. Supp. 2d 339, 342-43 (S.D.N.Y. 2008) (quashing service rather than dismissing complaint where nothing indicated "that [p]laintiffs' defective service was the result of a wanton or willful disregard for the laws of the United States or Thailand, or that [p]laintiffs had gained a significant and unfair advantage in the matter by insufficiently serving process").

### D.  Rule 4(f)(3) Request

In her opposition memorandum, Plaintiff requests that, in the event service was not properly made on the Foreign Defendants, she be permitted to serve them by "(1) electronic mail; (2) service upon Defendants' [c]ounsel; or (3) service upon Defendants' general counsel." (*See* Pl.'s Opp. Mem. at 14.) Rule 4(f)(3) authorizes service, by court order, upon a foreign defendant "by other means not prohibited by international agreement." *See* Fed. R. Civ. P. 4(f)(3).

Applying the relevant factors (*see* Legal Standards, Section I(B)(4), *supra*), in my discretion, I grant Plaintiff leave to serve Hastens AB and Ryde via email to their counsel of record in this case, Nixon Peabody LLP. Plaintiff has made a showing that she reasonably attempted to effectuate service on Hastens AB and Ryde and that the circumstances are such that the Court's intervention is necessary. *See Chen*, 2021 WL 103306, at *2. Plaintiff attempted (albeit unsuccessfully) to follow service methods permissible in Sweden under the Hague Convention vis-à-vis these two Defendants and is not "whimsically" seeking an alternate means of service. *See id*.

As discussed above, Sweden permits service of process to be made under the Hague Convention by persons other than the Swedish Central Authority. Plaintiff arranged to have a process server travel to Hasten AB's headquarters to seek to serve both Hasten AB and Ryde, its Chairman. The Summonses and Complaint were delivered to someone at Hasten AB's headquarters. Then, the process server traveled to Ryde's residence in an attempt to serve him there, but he was not home. Based upon the efforts made by Plaintiff to serve Hastens AB and Ryde, granting leave under Rule 4(f)(3) is appropriate.

Thus, I hereby ORDER that Plaintiff may serve the Summons and Complaint on Defendants' counsel, Nixon Peabody LLP, on behalf of each of Hastens AB and Ryde. Service upon defense counsel "is a common form of service ordered under Rule 4(f)(3)," and "[n]othing in the Hague Convention prohibits such service." *Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (citations omitted).[12]

By contrast, with respect to Defendant Hastens Ltd., I recommend that Plaintiff not be given leave under Rule 4(f)(3). Malta, where Hastens Ltd. is based, does not permit service under the Hague Convention except through its Central Authority. Since Plaintiff has not established that she made any effort to serve Hastens Ltd. through the Malta Central Authority, leave under Rule 4(f)(3) is not warranted. *See Kowalski v. Anova Food, LLC*, No. 11-CV-00795 (HG) (RLP), 2012

---

[12] Due to the global pandemic, I grant Plaintiff leave to serve defense counsel with the Summonses and Complaint by email. Further, because service pursuant to Rule 4(f)(3) need not conform to any particular provision of the Hague Convention or foreign law—rather, it simply cannot be "prohibited by international agreement," Fed. R. Civ. P. 4(f)(3)—Plaintiff need not translate her service papers into Swedish. The Court is satisfied that such service will comport with due process, as there can be little doubt that important documents emailed to attorneys at a global law firm are "likely to reach" clients they are actively representing. *See Cunningham*, 2020 WL 4748157, at *1. If Hastens AB or Ryde has difficulty "comprehend[ing]" the Complaint (*see* Foreign Defs.' Reply at 7), their counsel can explain it to them.

WL 3308886, at *3 (D. Haw. Aug. 10, 2012) (declining to authorize alternate service under Rule 4(f)(3) where plaintiffs failed establish that they had attempted service in accordance with the Hague Service Convention).

## II.      Personal Jurisdiction

Plaintiff bases personal jurisdiction over the Foreign Defendants in this case upon both general jurisdiction under New York Civil Practice Law and Rules ("CPLR") 301 and specific jurisdiction under New York's long-arm statute, CPLR 302(a).[13] (*See* Pl.'s Opp. Mem. at 15-20.) New York's general jurisdiction statute provides for jurisdiction over "persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. 301. A defendant is subject to personal jurisdiction if he or it is "engaged in such a continuous and systematic course of 'doing business' [in New York] as to warrant a finding of [his or] its 'presence' in this jurisdiction." *Laufer v. Ostrow*, 55 N.Y.2d 305, 310 (1982) (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)). However, an employee who is engaged in business in the state "does not subject himself, individually, to the CPLR 301 jurisdiction of [New York] courts unless he is doing business in our State individually." *Id*. at 313; *see also Wallace Church & Co. Inc. v. Wyattzier, LLC*, No. 20-CV-01914 (CM), 2020 WL 4369850, at *5 (S.D.N.Y. July 30, 2020) (holding that jurisdiction under CPLR 301 did not lie where conduct of individual defendants in New York was within their role as corporate principals); *Brinkmann v. Adrian Carriers, Inc.*, 29 A.D.3d 615, 617 (2d Dep't 2006) ("An individual cannot be

---

[13] "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler*, 571 U.S. at 125 (citing Fed. R. Civ. P. 4(k)(1)(A) (service of process is effective to establish personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")).

subject to jurisdiction under CPLR 301 unless he is doing business in New York as an individual rather than on behalf of a corporation.").

New York's specific (long-arm) jurisdiction statute states that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent":

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a).

CPLR 302 does not distinguish actions taken in a defendant's personal capacity from actions taken in his "corporate" capacity. *See Chloe v. Queen Bee of Beverly Hills*, 616 F.3d 158, 164 (2d Cir. 2010) (CPLR 302 "confers jurisdiction over individual corporate officers who supervise and control an infringing activity"); *Retail Software Servs. Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (upholding long-arm jurisdiction over corporate employees who were "primary actors" in transaction in New York that was source of litigation) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 472 (1988)). Where the CEO of an organization exercises extensive control over the day-to-day activities of a corporation, it is "appropriate" for the court to "consider the scope of the [corporation's] activities in New York in evaluating whether it [can] exercise personal

jurisdiction over [the CEO]." *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 98 (2d Cir. 2016).

I find that the record before the Court is not sufficiently complete for me to make a recommendation regarding the disposition of the Foreign Defendants' personal jurisdiction motion. However, at this stage of the case, I find that enough has been pled to warrant targeted jurisdictional discovery with respect to each of the Foreign Defendants, as set forth below.

The Court indisputably has general jurisdiction over Hasten Beds, which is based in New York, has answered and has not asserted a personal jurisdiction defense. Plaintiff alleges that Hastens Beds, Hastens AB and Hastens Ltd. operate in New York and throughout the United States as a single enterprise. (*See* Compl. ¶¶ 5, 47, 48; Pl.'s Opp. Mem. at 17, 19-20.) As Plaintiff asserts, the Internet presence of the three entities is intertwined. (*See* Pl.'s Opp. Mem. at 17-18.) Plaintiff's title as listed on her work emails was "Global Head of Talent Recruitment," above the corporate names "Hästens Limited" and "Hästens Beds, Inc.," and her email address had a suffix denoting Sweden, where Hastens AB is based.  (*See* Ex. F to 8/6/21 Christensen Decl., ECF No. 39-6.) Plaintiff received memoranda in October and December 2020 from the "Hastens Group" regarding short term incentives, which bore Ryde's signature as CEO. (See Christensen Decl., Ex. F, at PDF pp. 6-7.) These allegations and circumstances are sufficient to warrant jurisdictional discovery regarding the corporate relationship between and among Hastens Beds, Hastens AB and/or Hastens Ltd. *See Kucher v. Domino's Pizza, Inc.*, No. 16-CV-02492 (AJN), 2017 WL 2987214, at *11-13 (S.D.N.Y. Feb. 13, 2017) (holding that plaintiffs sufficiently alleged subsidiaries were "mere department" of parent entity subject to general jurisdiction in New York to warrant jurisdictional discovery); *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 417

(S.D.N.Y. 2009) (noting that jurisdictional discovery, rather than dismissal, is particularly appropriate if questions remain "regarding the relationship between a parent and its subsidiary given the fact-specific nature of the inquiry into whether a subsidiary's contacts should be imputed to the parent").

In addition, assuming that the Court does not have general jurisdiction over Hastens AB and/or Hastens Ltd. (as Defendants contend), jurisdictional discovery is appropriate to determine if long-arm jurisdiction exists over Hastens AB and/or Hastens Ltd. For example, to establish jurisdiction under CPLR 302(a)(3)(ii), a plaintiff must allege that "(1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011); *see also* N.Y. C.P.L.R. 302(a)(3)(i) (same first three elements as 302(a)(3)(ii), plus "[(4) the defendant] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state").

Plaintiff alleges that she was employed in New York by both Hastens AB and Hastens Ltd. (in addition to Hastens Beds) and that she reported to an individual, Marybeth Gregg (the Global Head of Human Resources for Hastens Group), who in turn reported to Ryde, the CEO of Hastens Group, which included Hastens AB and Hastens Ltd. (*See* Compl. ¶¶ 17, 46-48, 55.) Defendants admit that Hastens Ltd. had a contractual relationship with Vega. (*See* 6/24/21 Joint Ltr. at 2.) Moreover, Vega was assigned an email address with the Swedish domain "hastens.se." (*See*

8/6/21 Christensen Decl., Ex. F, at PDF pp. 4-5.) Plaintiff further alleges that the Foreign Defendants directed tortious conduct at her, causing her foreseeable injury in New York. Plaintiff's Complaint thus satisfies several prongs of the long-arm jurisdictional analysis. However, there are other facts, not in the control of Plaintiff, that may be necessary to determine if New York law permits the Court to exercise personal jurisdiction over Hastens AB and/or Hastens Ltd. under CPLR 302(a). Accordingly, Plaintiff is granted leave to conduct jurisdictional discovery regarding whether Hastens AB and/or Hastens Ltd. transact business within New York, regularly do or solicit business within New York, or derive substantial revenue from either interstate or international commerce or goods used or consumed in New York. *See Davey v. PK Benelux B.V.*, No. 20-CV-05726 (VB), 2021 WL 3501199, at *3 (S.D.N.Y. Aug. 6, 2021) (permitting jurisdictional discovery relating to New York long-arm statute).

With respect to Ryde, sufficient allegations have been pled to warrant jurisdictional discovery as to him as well. Ryde is the CEO of New York-based Hastens Beds and holds himself out as Executive Chairman of "Hästens Group Bed Company." (*See* n.2, *supra*.) He is alleged to have "had the authority to direct Plaintiff's work activities, assign her job responsibilities and monitor her performance" in circumstances where Plaintiff was working from New York, where the alleged discrimination and retaliation occurred. (Compl. ¶ 49.) Significantly, Ryde himself engaged in certain of the actionable conduct alleged in the Complaint, including sending Plaintiff (and others) in New York an email containing a link to a video with offensive content of a sexual nature. (*See* Compl. ¶¶ 134-41.) These allegations and circumstances are sufficient for Plaintiff to conduct jurisdictional discovery regarding (1) Ryde's New York-based activities, if any; and (2) whether Ryde himself transacts business within New York, regularly does or solicits business

within New York, or derives substantial revenue from either interstate or international commerce or goods used or consumed in New York. This information is necessary to determine if New York law permits the Court to exercise personal jurisdiction over Ryde under CPLR 301 or 302(a).

Thus, as part of my general pretrial management of this case, I hereby grant Plaintiff leave to take targeted jurisdictional discovery, as she requests. (*See* Pl.'s Opp. Mem. at 20 n.12.) With respect to Hastens AB and Hastens Ltd., the jurisdictional discovery shall be limited to (1) the corporate relationship between and among Hastens Beds, Hastens AB and/or Hastens Ltd.; and (2) whether Hastens AB and/or Hastens Ltd. transact business within New York, regularly do or solicit business within New York, or derive substantial revenue from either interstate or international commerce or goods used or consumed in New York. With respect to Ryde, the jurisdictional discovery shall be limited to (1) Ryde's New York-based activities, if any; and (2) whether Ryde himself transacts business within New York, regularly does or solicits business within New York, or derives substantial revenue from either interstate or international commerce or goods used or consumed in New York.[14]

---

[14] Given that I have quashed service on Hastens AB, Hastens Ltd. and Ryde, those Defendants need not provide jurisdictional discovery until they are served (for Hastens AB and Ryde, as directed herein, and for Hastens Ltd., in accordance with the Hague Service Convention). Nevertheless, if documents and information relating to these Defendants that are responsive to jurisdictional discovery are in the possession, custody or control of Hastens Beds, they shall be produced by Hastens Beds.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff has failed to show sufficient service of process, and therefore ORDERS that service on the Foreign Defendants is QUASHED. Plaintiff shall have sixty (60) days to effect service on the Foreign Defendants. In addition, I hereby ORDER that Plaintiff is granted leave, pursuant to Rule 4(f)(3), to serve Hastens AB and Ryde by email upon the Foreign Defendants' counsel, Nixon Peabody LLP.[15]

The Court defers making a recommendation with respect to the Foreign Defendants' motion to dismiss for lack of personal jurisdiction, pending the conclusion of jurisdictional discovery and supplemental briefing. In the joint letter currently due to be filed on September 2, 2021, the parties shall propose a schedule for jurisdictional discovery.

**SO ORDERED.**

Dated:  August 28, 2021
　　　 New York, New York

_____
　**STEWART D. AARON**
　**United States Magistrate Judge**

---

[15] Because these interim rulings are non-dispositive, the Court has the authority to issue them pursuant to the general pretrial referral set forth at ECF No. 31. *See McGregor v. In Tune Music Grp.*, No. 15-CV-62044 (PMH), 2016 WL 8737815, at *5 (S.D. Fla. Feb. 10, 2016) (quashing service of process as nondispositive matter); *adidas AG v. 2cn0931*, No. 18-CV-60758 (PMH), 2018 WL 4778075, at *1 (S.D. Fla. Apr. 17, 2018) (following general pretrial referral, authorizing service by email under Rule 4(f)(3)).